# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA
# MOBILE DIVISION

| | |
|---|---|
| **TYWANDA MCDONALD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil Action No. _____ |
| **v.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **BOARD OF TRUSTEES,** ) | |
| **UNIVERSITY OF SOUTH** ) | |
| **ALABAMA and** ) | |
| **CHARLES SMITH, in his** ) | |
| **Individual Capacity,** ) | |
| ) | |
| **Defendants.** | |

## COMPLAINT

Plaintiff **Tywanda McDonald** brings this civil rights action for injunctive relief and damages against Defendants Board of Trustees, University of South Alabama, and Charles Smith, in his individual capacity, based on the following factual allegations and causes of action.

## NATURE OF THE ACTION

1. Tywanda McDonald, a Black female, ("Plaintiff" or "McDonald"), was employed as a social worker at the University of South Alabama ("USA") Hospital. She brings claims under 42 U.S.C.A. §§ 1981 and 1983 against the Board

1

of Trustees, University of South Alabama, and Charles Smith ("Smith"), the director of employee relations for USA's healthcare system, alleging that she was terminated for raising complaints of discriminatory treatment of patients.

2. McDonald seeks reinstatement to her position as a social worker. She further seeks economic damages against Smith in the form of lost wages and back pay, compensatory damages for mental anguish and emotional distress, as well as her attorneys' fees and costs of litigation.

## THE PARTIES

3. McDonald resided in Washington County, Alabama, at the time of her employment by USA Hospital.

4. Defendant Board of Trustees is the entity subject to be sued under the laws of the State of Alabama for any claims alleged against the University of South Alabama and its entities. See Ala. Code §§ 16-49-21.

5. Defendant Smith is sued in his individual capacity as an officer of USA Hospital with the power to make and effectuate personnel decisions.

## PERSONAL JURISDICTION

6. The Board of Trustees may be served with proper process through its registered agent on record with the Alabama Secretary of State: Kristin Daniels Duke, 307 University Blvd. N., Room 140, Mobile, AL., 36608.

7. Defendant Smith may be served through proper process at his principal place of business at 251 Cox St., Suite 1570, CWEB 1.5, Mobile AL 36604.

## SUBJECT-MATTER JURISDICTION AND VENUE

8. Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

9. Venue is proper in this district and division under 28 U.S.C.A. §§1391(b)(1)-(2), as Defendant resides in and conducts business in, and the alleged unlawful acts occurred in, this judicial district and division.

## FACTUAL ALLEGATIONS

10. Tywanda McDonald was hired as a social worker in the neurology department at USA Hospital in May 2022.

11. McDonald's job duties consisted solely of patient case management tasks, including discharge planning, after-care coordination, and assistance with

determining eligibility for public benefits for indigents. Her role did not involve any aspect of therapeutic care or clinical counseling.

12. During 2023, McDonald became concerned about repeated instances of verbal abuse of patients by Dr. John Hinton, one of the senior neurologists in her unit. McDonald observed that the targets of Hinton's conduct were exclusively indigent or low income Black patients. Hinton is white.

13. In January 2024, McDonald received a complaint from a Black patient that Hinton had ridiculed her as a drug addict who was faking symptoms to obtain controlled substances.

14. On January 26, 2024, McDonald sent an email to Terry O'Neiil, the clinical director of neurology, and Dean Naritoku, the chair of the neurology department, reporting the patient's complaint and her own observations of Hinton's mistreatment of Black patients. In her email, McDonald urged that Hinton be directed to receive cultural sensitivity training.

15. Within days of the January 26 email, O'Neill ordered McDonald to refrain from discussing with any other personnel her concerns about patient care. In addition, O'Neill issued a directive that social workers were not to investigate complaints regarding patient care.

16. Neither O'Neill nor Naritoku responded to McDonald. Frustrated by the lack of followup, McDonald emailed USA Hospital's Human Resources Director Andrea Rosler and Employee Relations Director Charles Smith that she wanted to file a formal complaint regarding instances of racial bias towards patients by Hinton.

17. On March 5, 2024, Smith and two other HR staffers interviewed McDonald regarding her concerns about Hinton.

18. Later on March 5, only hours after she relayed details to him about her discrimination complaint, Smith informed McDonald that "her file had ended up on his desk" and that he had discovered that she had not passed the examination to obtain an Alabama social work license.

19. The social work license that Smith referenced is a prerequisite for rendering clinical care. The license is in no way a requirement to perform the patient management functions that comprised the entirety of McDonald's work at USA Hospital.

20. McDonald's failure to pass the social work licensure exam was known within her unit. Director O'Neill had encouraged McDonald to obtain the license during routine evaluation sessions with McDonald during her first two years at

USA Hospital, but had at no point described the license as an essential qualification of her job.

21. But on the afternoon of March 5, 2024, Smith suddenly told McDonald that she had 30 days to obtain the license or that she would be terminated.

22. In addition, Smith warned McDonald that she would be ineligible for rehire if she failed to secure her licensure.

23. As Smith likely knew, the social work licensing process is scheduled months in advance and occurs at periodic intervals during the year. McDonald could not reasonably be expected to meet a 30 day deadline.

24. On April 9, 2024, McDonald received a letter from Smith notifying her that she was terminated effective April 5, 2024. But rather than refer to the lapsed 30 day deadline, Smith identified a new rationale that McDonald had been given a one year window after her hire in May 2022 to obtain her license.

25. Smith's allusion to a one year post-hire window for McDonald to obtain a social work license is simply inaccurate, and reflects an effort on Smith's part to devise a pretext for her firing.

26. In contrast with her own treatment, McDonald was aware that at least one other social worker within USA Hospital who had not lodged discrimination

complaints failed multiple licensing exams but was retained in a case management capacity similar to McDonald's responsibilities.

27. While Smith is authorized by the hospital to make unilateral termination decisions, McDonald's termination by Smith deviates from the normal protocol at USA Hospital of terminations arising from the supervisors of individual departments.

## CAUSES OF ACTION
## COUNT I

**(against Board of Trustees, University of South Alabama)**

**(Retaliatory termination under 42 U.S.C.A. §§ 1981 and 1983)**

28. Plaintiff incorporates by reference paragraphs 1-27 of this complaint as though set forth fully and separately herein.

29. 42 U.S.C.A. § 1981 precludes discrimination in contractual relationships.

30. Patients are intended third party beneficiaries of a contractual relationship with USA Hospital in that their care is obtained through private insurance or public benefits that underwrite the cost of their care and reimburse the hospital for the provision of services.

31. Plaintiff engaged in protected activity under § 1981 in that she made an internal complaint alleging racially discriminatory conduct toward patients by a USA Hospital physician.

32. Based on her protected activity, Plaintiff was terminated by USA Hospital.

33. Plaintiff asserts her claim of retaliation against the Board of Trustees under § 1983.

34. To remedy her retaliatory termination by a USA entity, Plaintiff seeks reinstatement to her prior position.

## COUNT II

**(against Charles Smith, in his individual capacity)**

**(Retaliatory termination under Title VII, 42 U.S.C.A. §§ 1981 and 1983)**

35. Plaintiff incorporates by reference paragraphs 1-27, 29, 30-31 of this complaint as though set forth fully and separately herein.

36. Defendant Smith engaged in retaliatory conduct toward Plaintiff by terminating her based on her exercise of protected activity under § 1981.

37. Defendant Smith's violation of Plaintiff's statutory rights occurred while he was acting under color of state law.

38. Plaintiff asserts her claim of retaliation against Smith under § 1983.

39. As a result of his retaliatory termination, Plaintiff suffered economic damages in the form of lost wages and back pay and compensatory damages in the form of emotional distress and mental anguish. Plaintiff has also been made to bear the costs of litigation and attorneys' fees.

## PRAYER FOR RELIEF

Wherefore, based on the above-stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

A. Lost wages awarded against Defendant Smith in the form of back pay;

B. Compensatory damages awarded against Defendant Charles Smith to the full extent allowed by law;

C. Attorneys' fees and costs of litigation;

D. Pre-judgment and post-judgment interest at the highest lawful rate; and

E. Equitable relief in the form of reinstatement, and any other monetary relief as the court deems just and proper.

Respectfully submitted the 12th day of November, 2024.

**HKM Employment Attorneys LLP**

*s/Artur Davis*
Artur Davis
ASB-3672-D56A
2024 3rd Ave. North, Suite 212
Birmingham, Alabama 35203

       Direct: 205-881-0935
       adavis@hkm.com

**Counsel for Plaintiff Tywanda McDonald**